TIMBROOK NEWMAN, PLAINTIFF-RESPONDENT, v. MARY-
LAND CASUALTY COMPANY, DEFENDANT-APPELLANT.

Argued October 23, 1933—Decided January 12, 1934.

For the appellant, *McDermott, Enright & Carpenter*
(*James D. Carpenter, Jr.,* of counsel).

For the respondent, *J. Everett Newman (Theodore D. Parsons*, of counsel).

The opinion of the court was delivered by

TRENCHARD, J.   This is the appeal of the defendant below from a judgment entered upon a verdict for the plaintiff at the Monmouth Circuit.

Briefly stated the situation was this: The plaintiff-respondent, Timbrook Newman (hereinafter called the plaintiff), was a subcontractor of Burke Brothers Construction Company, who held the general contract made July 10th, 1924, for the construction of the Asbury Park High School under a contract with the board of education of that city, and who filed a bond for the faithful performance of the contract. The plaintiff, by his subcontract with Burke Brothers Construction Company, dated July 14th, 1924, agreed to excavate for the foundations of the building. He proceeded with this work, completed it, and under his contract, was entitled to receive $2,700 from Burke Brothers Construction Company. But that company then was adjudged insolvent and receivers were appointed. The board of education thereupon, on August 20th, 1924, canceled the contract and notified the receivers, and the defendant, Maryland Casualty Company (hereinafter called the defendant), who had given the surety bond under chapter 75 of the laws of 1918, that the contract was rescinded, and took possession of the site together with all materials thereon. Thereafter the defendant, Maryland Casualty Company, when the board of education again advertised for bidders to complete the work, formed a subsidiary company known as the McClary Corporation, which bid upon and obtained the contract for completion and gave a bond, with the defendant as surety, for the faithful performance of the contract. Later the McClary Corporation proceeded with the work, but did not complete it to the satisfaction of the board, and on September 7th, 1926, the board entered into occupancy of the building under a resolution which expressly provided "that such action must not be construed as acceptance of the building either in whole or in part." The de-

fendant, Maryland Casualty Company (who had succeeded to the rights of its subsidiary the McClary Corporation), brought suit against the board to recover as for completion. Finally, on November 17th, 1931, the board of education passed a resolution providing for a full settlement of all differences between the Maryland Casualty Company, the McClary Corporation, and itself, by the payment by the board to the present defendant of $100,000. This settlement was that day consummated by such payment and by the exchange of general releases between the parties. The release given by the board by its terms released the Maryland Casualty Company from any liability upon the Burke Brothers Construction Company's bond and contract as well as the McClary Corporation's bond and contract, and on December 6th, 1931, a formal resolution was passed accepting the building. On the day of the settlement, that is on November 17th, 1931, plaintiff served notice on the defendant, Maryland Casualty Company, of his claim for work, labor and materials, and upon denial of liability by such surety, instituted the present suit on February 25th, 1932. The trial judge submitted to the jury the determination of the time of acceptance by the board of education of the building. The jury expressly found that this acceptance had taken place on November 17th, 1931, and so rendered a verdict for the plaintiff. From the judgment entered thereon the defendant, Maryland Casualty Company, appeals.

We believe that the questions to be examined arose out of, and may be disposed of in effect, by a consideration of the legal propriety of the refusal of the trial judge to direct a verdict for the defendant.

The defendant contended and now contends that when Burke Brothers Construction Company defaulted in its contract with the board of education, and the board terminated the contract and took possession of the premises and relet the contract for completion, the action of the board in so doing was an acceptance of the work then done, and that the liability of the defendant Maryland Casualty Company upon the Burke Brothers Construction Company's bond was terminated

by this action, and that, therefore, the plaintiff's suit, brought in 1932, was barred both by the terms of the act and by the statute of limitations.

We think not. As we shall point out the action of the board of education in taking possession of the premises and reletting the contract for completion, was not an acceptance of the building or improvement under the Burke Brothers Construction Company's contract, within the meaning of the statute.

Of course the case calls for a construction of chapter 75 (*Pamph. L.* 1918, *p.* 203), known as the "Municipal Bonding act," and as we see it we are not concerned with subsequent amendments of the act. Section 3 of this act provides:

"Any person, firm or corporation to whom any money shall be due on account of having performed any labor or furnished any material in the construction, erection, alteration or repair of any such building, work or improvement within eighty days *after the acceptance thereof* by the duly authorized board or officer, shall furnish the sureties on said bond a statement of the amount due to any such person, firm or corporation. No suit shall be brought against said sureties on said bond until the expiration of sixty days after the furnishing of said statement. If said indebtedness shall not be paid in full at the expiration of said sixty days, said person, firm or corporation may bring an action in his own name upon such bond, *said action to be commenced within one year from the date of the acceptance of said building,* work or improvement."

The bond upon which this suit is based was given pursuant to the provisions of this act. The right, therefore, of plaintiff to his judgment depends upon the construction of the word "acceptance" in section 3 of the act.

It is clear that the act of the board in taking possession of the premises and reletting the contract for completion, occasioned by the default in the original contract, was not an acceptance of the building, so as to release the surety from the bond. The bond, in the form prescribed by section 4 of the act, read in part as follows:

"Now, if the said Burke Brothers Construction Company, Incorporated, shall well and faithfully do and perform the things agreed by it to be done and performed according to the terms of said contract * * * this obligation shall be void; otherwise the same shall remain in full force and effect."

This bond by its very condition remained in full force and effect if the Burke Construction Company failed to complete the high school building. The defendant does not deny that its principal failed to do this and so breached its contract with the board.

But defendant argues that when the Burke Brothers Construction Company breached its contract with the board of education and the board thereupon took possession of the premises and relet the contract for completion, the board thereby accepted the work done by Burke Brothers Construction Company.

The answer to this, as the evidence shows, is that, instead of accepting the work, the board notified the defendant surety company that the contract had been breached and the work abandoned by the surety company's principal, and because thereof the board had taken possession, as authorized by the contract, and thereafter relet the contract for the completion of the work. It follows that the bond remained in full force and effect until the completion and acceptance of the building or improvement which was the subject-matter of the contract.

The bond was primarily for the protection of the public body, and then only thereafter for the protection of the laborers and materialmen. The action of the board of education in reletting the completion of construction and accepting a surety bond thereon, in nowise affects the original bond given by the defendant, Maryland Casualty Company. The board of education had the right to relet the work necessary to complete the building and until the building was accepted such action did not terminate rights existing under the original bond given for the original contractor.

But the defendant further contends that in any event the action of the board of education, in entering into the occu-

pancy of the partly completed building on September 7th, 1926, was an acceptance of the work or improvement such as is contemplated by the statute of 1918. Clearly it was not. That action was taken under a resolution of the board providing "that such action must not be construed as acceptance of the building either in whole or in part."

We have pointed out that the bond upon which this suit was predicated was not released, nor the work accepted until November 17th, 1931, as the jury expressly and properly found from the evidence. Until that time the plaintiff had no right to take any steps for the collection of his claim under the bond.

We believe that the foregoing views are sustained by the authorities.

Thus in *Franklin Lumber Co.* v. *Globe Indemnity Co.*, 102 *N. J. L.* 9; *affirmed, Ibid.* 715, it was said:

"\* \* \* As we read the act the words 'after the acceptance thereof,' contained in the third section thereof, *refer to the building or improvement which is the subject-matter of the contract, and not to the materials used therein or the work done thereon.* It does not disclose a purpose upon the part of the legislature to give preference to the claims of materialmen or laborers over the claims of the public agency, by compelling the surety to pay the claims of the former without regard to the rights of the latter, but, on the contrary, *protects those rights by requiring that no step shall be taken by materialmen or laborers looking to the enforcement against the surety of their claims against the contractor, until after the building or improvement has been accepted by such public agency.* Upon this construction of the statute *notice of default* by the contractor in the payment *of such debts, in order to constitute a basis for a suit against the surety, cannot be legally served prior to such acceptance."*

Again in *Warren Brothers Co.* v. *Hartford, &c., Co.*, 102 *N. J. L.* 616, it was said:

"\* \* \* The primary purpose of the bond is the protection of the public body, the clause favoring materialmen, &c., being by the express language of the statute an 'additional obligation.' "

In *E. J. Lavino & Co.* v. *National Surety Co.*, 104 *N. J. L.*
475, the plaintiff sued the surety company upon a bond given
to Camden county for a contract for the hospital obtained
by one King. Thereafter the work under this contract was
performed by a company. The surety company raised the
issue that inasmuch as the contract had been entered into
with one King and the bond given as a surety for King, the
company was not responsible for work furnished an assignee
of King's. This contention the court overruled, saying:

"The question in this case seems to me to be whether the
plaintiff actually furnished the materials it claims to have
furnished for the work comprised in King's contract."

In *Yale & Towne Manufacturing Co.* v. *Aetna, &c., Co.*,
110 *N. J. L.* 592, this court considered the meaning of "acceptance" within the terms of the statute. There the board
of education had accepted a school building on July 11th,
1931, with the exception of the meeting room and a few
other specified items, and retained certain moneys until the
completion thereof. The work was unconditionally accepted
on March 5th, 1932. The surety company contended that the
acceptance of July 11th, 1931, was final and barred the plaintiff's action because no statement was furnished within eighty
days thereafter. This court held to the contrary, saying:

"Certainly the statute contemplates *a final, complete and
unconditional acceptance of the building or improvement
which is the subject-matter of the contract.* To hold otherwise would seriously jeopardize the rights of materialmen
and laborers, intended to be protected by the statute."

In *John P. Callaghan, Inc.*, v. *Continental Casualty Co.*,
110 *N. J. L.* 390, it was held that the plaintiff's rights of
action against the surety arose only upon the acceptance of
the work or improvement.

Since it was competent for the jury in the instant case to
find from the evidence, and since they did expressly find,
that the work was accepted by the board on November 17th,
1931, when the litigation between the board and the bonding
company was settled by the payment of $100,000, and the
exchange of general releases containing specific references to

both contracts and both bonds, it follows that plaintiff's action, commenced on February 25th, 1932, was not barred by the limitation of one year fixed by the statute.

The judgment below will be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.   15.

*For reversal*—None.